Earl Weakly, Appellee, v. C. C. Firebaugh, Appellant, and C. Walter Jones.

Gen. No. 8,662.

Opinion filed January 16, 1933.

BRYAN H. TIVNEN, for appellant; THOMAS R. FIGEN-BAUM and CARUS S. ICENOGLE, of counsel.

U. G. WARD, ROBT. I. PUGH and PHILIP L. TURNER, for appellee.

Mr. Presiding Justice Eldredge delivered the opinion of the court.

Earl Weakly, plaintiff in the court below and appellee here, brought an action of replevin against C. C. Firebaugh and C. Walter Jones to recover the possession of certain personal property and obtained a verdict and judgment not only for the possession of the property but also a money judgment in the sum of $325 under a count in trover. Firebaugh alone prosecutes this appeal.

Prior to October 15, 1930, the plaintiff, Weakly, had been operating a farm in Shelby county, part of which he owned and part of which he had leased from another party. On the above date Weakly ceased to personally operate the farm and took up his residence in the City of Shelbyville, leaving his live stock and farming implements upon the farm. Sometime in February, 1931, he entered into negotiations with the defendant Jones by which the latter was to move on the farm as a tenant. Jones moved onto the farm on March 1, 1931, bringing with him some live stock and equipment which he owned. Weakly testified that the original agreement was that Jones was to operate the farm under a "50-50" basis which was done for a few weeks. A new agreement was reached between the parties on or about March 28, 1931, when Jones offered to buy the personal property owned by Weakly then on the farm and to operate the farm on his own responsibility as a tenant. Weakly at this time was apparently operating a gasoline station in the City of Shelbyville and testified that his wife handled all the accounts pertaining to the farm for him. There were a number of cows on the farm and as Jones sold the milk from these cows Mrs. Weakly kept the accounts in regard thereto and paid Jones his portion of the receipts from the milk or cream so sold by him. This was while Jones was operating the farm upon the "50-50" plan. When the negotiations commenced be-

tween Jones and Weakly for the purchasing of the personal property of Weakly which was on the farm, Mrs. Weakly, with the approval of her husband, made out a list of such property together with the valuations thereof which were fixed by appellee showing the amount which Jones was to pay for the property. This list is as follows:

"Stock and Tools:

| | | |
|---|---:|---|
| 3 cultivators............$ | 25.00 | |
| Mower ................. | 25.00 | |
| Corn Sheller ............ | 2.00 | C. Walter Jones |
| Wagon ................. | 25.00 | |
| Gas Engine ............. | 25.00 | Earl Weakly |
| Harrow ................ | 5.00 | |
| Plows .................. | 30.00 | |
| Disc ................... | 10.00 | |
| Planter ................ | 75.00 | |
| Roller ................. | 10.00 | |
| Oats seeder ............. | 25.00 | |
| Harness ................ | 25.00 | |
| Cows, 9................. | 675.00 | |
| Horses, 3 ............... | 200.00 | |
| Calves, 3 ............... | 30.00 | |
| Sows, 3 ................ | 150.00 | |
| Corn, 300 bu. ........... | 180.00 | |
| Oats, 90 bu. ............. | 25.20 | |
| Hay, 6 ton @ $12.00 per.. | 72.00 | |
| Seed Beans, 8 bu. @ $2.00 per ................. | 16.00 | |
| | $1630.20 | |
| Pasture rent ............ | 200.00 | |
| | $1830.20 | |

"1st half payable Sept. 1, 1931, 2nd half payable January 1, 1932."

Jones agreed to purchase the property mentioned in the said list at the prices therein fixed by Weakly. Thereafter on April 14, 1931, Jones and Weakly went to a lawyer in Shelbyville for the purpose of having a lease drawn up and executed for the farm land. They went to the lawyer's office in the evening of that day. A written lease of the land was executed by Jones and Weakly. The subject of the purchase of the personal property was also discussed at that time. The total price of the personal property which had been agreed upon in accordance with the schedule heretofore mentioned was $1,630.20. The lawyer suggested that Jones give his note for this amount payable to the order of Weakly, due one year after date with interest at seven per cent. This note was executed by Jones. It was then agreed that Jones should also execute a chattel mortgage on the property so purchased by him from Weakly to secure the note. The chattel mortgage was drawn up and signed by Jones. The chattel mortgage, however, was not acknowledged at that time because the justice of the peace before whom it had to be acknowledged was not obtainable on account of the lateness of the hour but it was tentatively agreed by the parties that Weakly and Jones would come to the office the following morning when Jones would acknowledge the chattel mortgage. The papers were left by the parties in the lawyer's office at that time. Neither Jones nor Weakly appeared the following day nor at any other time and the chattel mortgage was never acknowledged by Jones, and the papers, including the lease, note and unacknowledged chattel mortgage remained in the office of the lawyer for a considerable length of time, though the note and lease were in some manner subsequently delivered to Weakly. The lawyer met Weakly several times and called his attention to the fact that the chattel mortgage had never been acknowledged nor recorded and

advised him to have these things done, and on each occasion Weakly replied in substance that some day he would attend to the matter. Jones proceeded to operate the farm and the milk checks received for the sale of milk were turned over to Weakly as payments on the note and were so indorsed on the note by either Weakly or his wife. These indorsements were as follows: "March 31, 1931, milk checks 28.59; April 30, 1931, milk checks, 33.18, May 31, 1931, milk checks $32.16." Thus it is evident that the parties considered that the sale of the property was effectuated at the time they made their oral agreement March 28, 1931, as Jones is given credit on the note for the milk checks turned over to Weakly on March 31, 1931. When the assessor went to Weakly to obtain his schedule of personal property for taxation, the latter told him that in regard to the personal property on the farm in the possession of Jones, "It is a little agreement between ourselves, kind of like 50-50." Weakly thereupon filled out the tax schedule as the property of Jones and signed Jones's name thereto. On June 29, 1931, Weakly had judgment entered against Jones on the note given by him in payment for the property and execution was issued on said judgment.

Appellant, Firebaugh, is president of the Commercial State Bank at Windsor, Illinois and it appears that Jones was indebted to said bank in the sum of $1,173.20. On May 27, 1931, Jones executed his promissory note for said amount payble to Firebaugh nine months after date with interest at seven per cent per annum and on the same day executed a chattel mortgage to secure the same which embraced the same chattel property in controversy. This chattel mortgage was acknowledged by Jones and recorded in the recorder's office of Shelby county on the same day. On June 24, 1931, Jones executed another note in the principal sum of $400 payable to the order of Fire-

baugh and on June 29, 1931, to secure said note he signed and acknowledged another chattel mortgage which embraced 16 head of Duroc hogs, an undivided one-half interest in 30 acres of growing corn, 20 acres of growing oats and an undivided three-fifths interest in 10 acres of growing soy beans, one Jersey heifer two and one-half months old and one Jersey heifer two weeks old. The property embraced in this mortgage was not included in the former mortgage to Firebaugh. The last mentioned note and mortgage it is claimed was given by Jones as an additional security or collateral security to the other debt. On September 7, 1931, Firebaugh foreclosed both of his chattel mortgages and at the foreclosure sale bid in the property. On September 25, 1931, Weakly brought this suit in replevin to recover said personal property from Firebaugh.

It is the theory of appellee that the contract for the sale of the personal property mentioned to Jones included the condition that Jones was to execute a chattel mortgage to secure the note evidencing the purchase price thereof, and that having failed to do so the contract was never completed and that the title to the personal property in question remained in himself. The first two instructions offered by appellee and given by the court in substance state that if the jury believe from the evidence that the contract of sale between Weakly and Jones provided that the latter was to secure the payment of the purchase price of the property by executing a chattel mortgage on the property sold and that Jones failed to complete his contract of purchase and did not execute and acknowledge the chattel mortgage on said property securing the purchase price thereof, then Jones would not have acquired title to said property under said contract of sale. A condition in any contract may be waived by the party thereto who is entitled to receive the benefit of the condition. There is evidence in the record tend-

ing to show that Weakly under the circumstances as shown did waive the condition that Jones was to secure and deliver a chattel mortgage to secure the note executed by him for the purchase price of the articles mentioned. Nowhere in the evidence does it appear that Jones refused to acknowledge the chattel mortgage. On the contrary, it shows that he was perfectly willing to do so and that the mortgage was not acknowledged was due to the negligence or indifference of Weakly. These instructions were erroneous in not embracing the question of waiver on the part of appellee.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*