**NORTHLAND ASSOCIATES, an Illinois limited partnership, and Unicoa Realty Corporation, a Delaware corporation, partners doing business under the trade name and style of De Kalb Associates, an Illinois co-partnership, Plaintiffs,**

v.

**F. W. WOOLWORTH COMPANY, a New York corporation, Defendant.**

**No. 73 C 1062.**

United States District Court,
N. D. Illinois.

July 24, 1973.

Samuel Morgan, Chicago, Ill., for plaintiffs.

Williams & Leonard, Ltd., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on defendant's motion to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, for failure to state a claim upon which relief can be granted. The action seeks a declaratory judgment, pursuant to 28 U.S.C. § 2201, that a cer-

tain lease "is no longer in force and that it was in fact terminated as of March 1, 1973." Jurisdiction is grounded upon diversity of citizenship; the amount in controversy exceeds the sum or value of $10,000.

The underlying facts are undisputed: Plaintiffs, an Illinois limited partnership and a Delaware corporation which are doing business as an Illinois co-partnership, are the present owners of a shopping center in DeKalb, Illinois, known as Northland Plaza. Defendant F. W. Woolworth Company (hereinafter referred to as "Woolworth", "defendant", or "tenant") is a New York corporation which owns and operates Woolco department stores.

Plaintiffs' predecessors in interest, as landlord, entered into a lease dated March 2, 1965 with Woolworth, as tenant, for a certain portion of that shopping center to be used for a Woolco store. Subsequently, the original landlord and tenant entered into a lease modification agreement dated March 7, 1966 and executed an amendment of the lease by letter dated May 17, 1966. Defendant opened its Woolco store in Northland Plaza on May 25, 1966 and has been doing business there from that time to the present. Sometime after plaintiffs purchased the shopping center, a dispute arose between the parties as to the amount of rent which plaintiffs were entitled to receive under the modified lease.

The pertinent portions of the lease are those dealing with rental and with other proposed tenants of the shopping center. The original lease provided for a minimum annual rental of $72,000, plus a varying percentage of the Woolco store's annual sales in excess of $3,600,000.

The landlord was required by the lease to execute additional leases for a major grocery store and a drug store as "Principal Tenants" and for ten other retail stores of certain types as "Additional Tenants" at least 180 days prior to delivery of the demised premises to Woolworth. Rent was to abate from the beginning of the lease term until such time as certain conditions had been satisfied, among them the requirement that at least nine of the Additional Tenants, occupying a total of at least 56,000 square feet of ground floor space, must be doing business in their respective premises.[1]

By the terms of the subsequent modifications of the lease, Woolworth agreed to accept delivery of the demised premises prior to the fulfillment of the conditions precedent set forth in the original lease.[2] An "interim period" was designated, beginning with the opening of the Woolco store and continuing until the aforementioned conditions had been satisfied. During this interim period Woolworth was to pay rent at the reduced rate of one and one-half percent of its sales at the demised premises.

Although nine Additional Tenants have been secured and are operating their stores in the shopping center, these tenants occupy an aggregate ground floor space of approximately 18,000 square feet, an area considerably short of the 56,000 square feet necessary to terminate the interim period. Accordingly, Woolworth has continued to pay rent at the reduced interim rate.

Nevertheless, plaintiffs assert that the lease terminated on its fifth anniversary, pursuant to the provisions of the cancellation clause in the original lease (Article 27, Section III). That clause

1. Other requirements with respect to tenants were (1) that all of the Principal Tenants must be doing business in their respective premises and (2) that other tenants (in addition to those specified as Additional Tenants and not necessarily in the retail categories listed in the lease), occupying a total of at least 2,500 square feet of ground floor space, must be doing business in their respective premises.

2. The conditions Woolworth thereby waived included completion of construction of its own store (less than 70 percent of its ground floor space requirement was available) and occupancy by the other tenants of the shopping center as specified hereinabove.

provides for cancellation within one year, at the option of tenant, if the premises have not been delivered to tenant in accordance with the lease provisions by May 1, 1966.[3] The clause continues:

"In any event, this lease shall automatically terminate and cancel on the fifth (5th) anniversary of the date of this lease unless the demised premises have been delivered to the Tenant on or before said fifth (5th) anniversary date."

Plaintiffs contend that, since the premises were not delivered *as provided in the lease* (i. e., with the requisite number of tenants occupying the requisite amount of ground floor space) within five years, the lease has automatically terminated.

■ Responding with the instant motion,[4] defendant submits that the cancellation clause is inoperative since the premises were in fact delivered to Woolworth on or before May 25, 1965, when the Woolco store opened for business and began paying rent. Defendant's affidavits and exhibits demonstrate that Woolworth has been in possession of the demised premises since that date.

■■ The Court agrees with defendant that by accepting delivery of the premises, opening its store for business, and paying rent Woolworth waived some of the landlord's obligations as conditions precedent to delivery of the premises. In fact, the rent reduction for the interim period constitutes consideration for the waiver. Thus, pursuant to the lease modifications those unfulfilled obligations became conditions precedent to the landlord's right to receive rent at the full rate specified in the lease. The absurdity of plaintiffs' argument is patent; it is inconceivable that one party to a contract could raise his own default to defeat the contract. Only the non-defaulting party (Woolworth) has standing to cancel the lease on that basis, since it is Woolworth that is entitled to receive benefit from the obligations defaulted.[5] Thus, the Court finds that Woolworth waived any conditions precedent to delivery which remained unfulfilled upon delivery of the demised premises, as well as waiving its right to cancel the lease by failing to exercise that right within one year after landlord's default.

■ Plaintiffs have raised two additional arguments: (1) that the interim period created by the modification agreement was intended by its terms to extend for more than one year and (2) that the presence of a Montgomery Ward store on property adjacent to the shopping center, with a ground floor area of almost 60,000 square feet, constitutes an adequate substitute for the shortage of the Additional Tenants' ground floor area and therefore should terminate the interim period. The first of these contentions is obviously erroneous; the lease modification agreement specifies only that the interim period shall continue until

". . . the last day of the month in which (1) the Landlord has completed the remaining construction . . . and (2) such Additional Tenants are in occupation of their respective premises and doing business therein."

Plaintiffs' assertion with respect to the Ward store also is without merit. Not only does the lease as modified fail to provide for substitution in the performance of its terms, but the Ward store is not even within the retail classifications permitted by the lease for Additional Tenants. In fact, the lease prohibits the tenancy of other department stores in the shopping center [Article 31, Subsec-

3. This date was subsequently amended to October 1, 1966, and later extended by letter to March 1, 1967.

4. Since defendant's motion to dismiss arises under Rule 12(b)(6) and is ac-

companied by affidavits and exhibits, the Court will treat it as a motion for summary judgment as provided in Rule 12.

5. Weakly v. Firebaugh, 269 Ill.App. 123, 128 (1933).

tion (d)]; [5a] thus, this Court cannot find that the opening of the Ward store on adjacent premises satisfied the conditions specified by Woolworth. Rather, the Court concludes that there is no genuine issue of material fact [6] and that the defendant is entitled to judgment as a matter of law.

Accordingly, it is hereby ordered, adjudged and decreed that defendant's motion is granted and that this cause is dismissed.

---

5a. However, even if the lease did not prohibit such tenancy—or if that provision were waived by Woolworth—this result still would follow, for the Ward store is not on the subject premises and thus cannot fulfill tenancy requirements for those premises.

6. Although plaintiffs have submitted an affidavit ostensibly in conflict with those of defendant, an examination thereof demonstrates that the conflict is one of semantics (*viz.*, whether "delivery" means delivery of possession or delivery in accordance with the lease) and of law, not of fact.